## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KYRA ANNE NICOLE YERT,**                  )
                                            )
                           **Plaintiff,**                  )
                                            )    **CIVIL ACTION**
**v.**                                      )
                                            )    **No. 14-1317-JWL**
**CAROLYN W. COLVIN,**                       )
**Acting Commissioner of Social Security,**  )
                                            )
                         **Defendant.**                  )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security
(hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under
sections 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a and
1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Administrative Law Judge's
(ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth
sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.  Background

Plaintiff applied for SSI benefits, alleging disability at birth, June 19, 1987.  (R.
19, 159).  Plaintiff exhausted proceedings before the Commissioner, and now seeks
judicial review of the final decision denying benefits.  Plaintiff argues that the ALJ erred
because substantial evidence doesn't support her findings of an ability to walk at a

reasonable pace and shop in a reasonable time frame, or an ability to walk and/or stand two hours and sit six hours in an eight-hour workday, and she argues that the ALJ did not provide a proper analysis of the credibility of Plaintiff's allegations of symptoms resulting from her impairments.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

3

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff was born with an autoamputation of her right leg below her knee.  (R. 329, 411).  She had several surgeries as a child on the stump of her leg below her knee. Id.  She has worn a prosthesis for many years.  Id.  She alleges disability because of this and other impairments.  (R. 21-22).  The ALJ determined that Plaintiff has not been disabled within the meaning of the Act since she filed her application, and Plaintiff seeks judicial review of that determination.  (R. 32).  Because Plaintiff bases most of her allegations of error on her testimony or on her assertions in the documents she completed in the application process, the court begins its review with consideration of the ALJ's credibility determination.  It will then address each additional error alleged by Plaintiff.

## II.    Credibility

Plaintiff claims that her "subjective statements potentially indicative of more severe limitations or restrictions than can be shown by objective medical evidence alone were not given careful consideration by the administrative law judge other than the actions taken to carefully disqualify Plaintiff's statements and credibility in order to conform some sense of congruency to an improperly derived denial of benefits.  The findings are not based on substantial evidence and likewise do not adhere to proper legal standards, especially SSR [(Social Security Ruling)] 96-8p and the proper formulation of

4

a residual functional capacity assessment." (Pl. Br. 20). Plaintiff quotes at length from Judge Crow's credibility discussion in the case of Zimmer v. Astrue, 2012 WL 1135933, at *7-8, No. 11-2255-SAC, slip op. at 17-19 (D. Kan. April 4, 2012) (quoting Draper v. Barnhart, 425 F.3d 1127, 1130-31 (8th Cir. 2005) (quoting Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989)). (Pl. Br. 21-22). Thereby Plaintiff suggests that the ALJ applied the incorrect analysis to Plaintiff's activities of daily living and used those activities erroneously to demonstrate that Plaintiff can perform full-time competitive work. Id. at 22.

The Commissioner argues that the ALJ reasonably found that Plaintiff's allegations of symptoms resulting from her impairments are not credible, and that the reasons given by the ALJ to discount Plaintiff's allegations are supported by the record evidence. (Comm'r Br. 6-8). She points out that Plaintiff did not allege that any of the ALJ's reasons were improper or unsupported, and argues that Plaintiff has thereby waived any assertion that the reasons given are deficient. Id. at 8 (citing Anderson v. Dep't of Labor, 422 F.3d 1155, 1174, 1182 n.51 (10th Cir. 2005); and Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012)). She argues that even though Plaintiff generally claimed that the ALJ did not conduct a proper credibility determination and that her findings are not supported by substantial record evidence, Plaintiff's allegations are undeveloped and should not be considered. Id. at 9. Finally, the Commissioner distinguishes Zimmer, arguing that in this case, the ALJ considered factors in addition to activities of daily living in finding that Plaintiff's allegations are not credible, and would

5

have found Plaintiff's allegations not credible even if she had not considered activities of daily living.  (Comm'r Br. 9).

## A.      Standard for Evaluating Credibility

The framework for a proper credibility analysis is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling.  See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework).  The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).  The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner.  Luna, 834 F.2d at 165-66.  Those factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and

relationship between the claimant and other witnesses, and the consistency
or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at

1489).

The court's review of an ALJ's credibility determination is deferential.  Credibility

determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d

585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).

"Credibility determinations are peculiarly the province of the finder of fact" and will not

be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord

Hackett, 395 F.3d at 1173.

### B.      The ALJ's Credibility Determination

At the beginning of her RFC assessment, the ALJ stated that she had considered

Plaintiff's allegations of symptoms.  (R. 25).  Although the ALJ laid out only a two-step

credibility analysis, the first step of that analysis (whether the evidence shows that

Plaintiff has a medically determinable impairment that could reasonably produce the

symptoms alleged) encompasses both the first and second steps of the Luna framework--

(1) whether Plaintiff has shown a symptom-producing impairment with (2) a "loose

nexus" to Plaintiff's allegations of symptoms.  The second step in the ALJ's analysis is

the same as the third step in the Luna framework--if Plaintiff's impairments could

reasonably produce the symptoms alleged, the ALJ must consider all of the evidence both

objective and subjective to determine whether Plaintiff's allegations are credible.

The ALJ stated that she found Plaintiff's allegations of "symptoms are not entirely credible for the reasons explained in this decision." (R. 26). The court discerns eight reasons given in the ALJ's RFC assessment to support her credibility determination. (1) "[T]he objective medical evidence does not support the claimant's allegations." (R. 26). (2) Although Plaintiff testified to an ability to sit only 20 to 30 minutes, "she attends church, watches television, and spends time during the day reading, activities that tend to involve extended sitting." (R. 28). (3) "Although [Plaintiff] testified to complaints of slippage, such slippage did not occur during examinations with her doctor." Id. (4) Dr. Pence advised Plaintiff to perform only sedentary work. Id. (5) Plaintiff utilized "only conservative treatment, including mild analgesics, and icing the stump with some alleviation of symptoms and no side effects." (R. 29). (6) Plaintiff's report of significant limitation due to anxiety "is inconsistent with her reported contact with friends and family several times a month, as well as her ability to converse on the telephone, interact with her children, attend church weekly, shop several times a week, and attend movies or visit restaurants." Id. (7) Plaintiff's statements made for the purpose of receiving treatment are given more credit because of the general rule that such statements "are usually more reliable than those made strictly in the context of a disability claim." Id. And, (8) Plaintiff's "daily activities are consistent with the [RFC assessed] but are inconsistent with [her] disability allegations." Id.

## C.   Credibility Analysis

Plaintiff clearly alleged error in the ALJ's credibility determination. That allegation requires the court to review the credibility determination to consider if the ALJ applied the correct legal standard and if record evidence supports the ALJ's determination. Therefore, the Commissioner's waiver argument is without merit. Because judicial review requires the court's inquiry into the credibility issue raised by Plaintiff, if the court finds error in the credibility determination, it will remand the decision even if the plaintiff did not allege that particular basis of error. The doctrine of waiver is not so nuanced as the Commissioner apparently believes.

As noted above, the legal standard applied by the ALJ in her credibility determination is equivalent to the framework expressed by the Tenth Circuit in <u>Luna</u>. The court finds that the ALJ applied the correct legal standard in her credibility determination.

And, other than assigning improper motives to the ALJ and arguing that Plaintiff's testimony and the documents she completed in the application process provide credible evidence that she is unable to ambulate effectively and that she cannot achieve the sitting, standing, or walking limitations assessed by the RFC in this case, Plaintiff does not explain precisely what is wrong with the ALJ's credibility finding. But she does at least imply that the ALJ applied the incorrect analysis in considering Plaintiff's activities of daily living and used those activities erroneously to demonstrate that Plaintiff can perform full-time competitive work. (Pl. Br. 22) (quoting <u>Zimmer</u>, 2012 WL 1135933, at *7-8 (relying on Eighth Circuit case law)).

Although Eighth Circuit precedent is not binding on this court, the court recognizes that the law of the Tenth Circuit is to the effect that "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity."  Thompson, 987 F.2d at 1490; see also Talbot v. Heckler, 814 F.2d 1456, 1462 (10th Cir. 1987) ("limited activities in themselves do not establish that one can engage in light or sedentary work activity"); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983) (yard work, household tasks, car repairs, occasional car trips are not considered regular or prolonged activity).  However, the court does not find that the ALJ in this case relied on the sporadic performance of household tasks or work to establish an ability to perform substantial gainful activity.  Rather, the ALJ noted that Plaintiff's activities that tend to involve extended sitting are inconsistent with her allegation that she can only sit for 20 to 30 minutes (reason 2); that her contact with friends and family, her telephone conversations, her interaction with her children, attendance at church weekly, and shopping, attending movies, and visiting restaurants are all inconsistent with her allegations of significant limitation due to anxiety (reason 6); and that her daily activities are consistent with the RFC for a limited range of sedentary work, but are inconsistent with Plaintiff's allegations of disability (reason 8).  Moreover, the ALJ provided five other reasons to find that Plaintiff's allegations are not credible.  The court finds that those reasons are supported by record evidence, and Plaintiff made no argument otherwise.  The court finds no error in the credibility determination.

## III.     Errors alleged in the ALJ's Findings at Step Three

Plaintiff claims that in her step three finding "on the crucial issue of the inability to ambulate effectively," the ALJ relied on Plaintiff's Adult Function Report in Exhibit 5E and on Plaintiff's testimony to find that Plaintiff could perform certain activities, and stated that "'[t]hese activities would require her to sustain some degree of ambulation on her prosthesis.'" (Pl. Br. 15) (quoting R. 23). She argues that the ALJ misrepresented Plaintiff's ability to walk at a reasonable pace. Id. She claims the ALJ erred in finding that "she is able to shop in a reasonable amount of time" (Pl. Br. 16-17) (quoting R. 23) because Exhibit 5E, Plaintiff's function report cited by the ALJ does not "indicate the amount of time necessary to conduct shopping," id. at 17, and the ALJ "has substituted her opinion [in this regard] for actual evidence on this very crucial consideration." (Pl. Br. 18). She notes her testimony that "she would not be able to walk a block's distance and keep up with the "average person" doing the same," that "she was a slower walker and had to take breaks often," and that "she could walk a quarter of a block but would have to rest a bit." Id. (citing R. 55). She also claims that "[t]he assignment of a 2 hour standing/walking limitation is simply a caprice and is not supported by any evidentiary finding," and "is counter to Plaintiff's credible testimony that she could sustain no more than 10 minutes before experiencing pain and discomfort standing." Id. at 19. Finally, she claims the ALJ failed to "consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC" in accordance with the requirements of SSR 96-8p. Id. at 20.

The Commissioner responded that the ALJ reasonably found that Plaintiff's condition does not meet the requirements of Listing 1.02 or 1.05 because Plaintiff did not meet her burden to show that she has an extreme limitation of the ability to walk, as contemplated in the Social Security regulations' use of the term "inability to ambulate effectively." (Comm'r Br. 3). The Commissioner argues that the Adult Function Report and Plaintiff's testimony which were relied upon by the ALJ amount to Plaintiff's denial that "her impairments seriously interfered with activities of daily living," and constitute record evidence supporting the ALJ's step three determination. Id. at 4. She acknowledges that Plaintiff's function report does not state the amount of time required to shop, but argues that because Plaintiff did not say that shopping took an excessive amount of time, it was appropriate for the ALJ to draw the inference that Plaintiff "was able to shop in a reasonable time frame." Id. at 5 (citing SSR 85-16, 1985 WL 56855, at *2 ("In analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable conclusions about the individual's strength and weaknesses."); and Tillery v. Schweiker, 713 F.2d 601, 603 (10th Cir. 1983) (when the evidence permits varying inferences, the court should not disturb the ALJ's findings)).

In her Reply Brief, Plaintiff once again relies on the information she provided in her function report to argue that the ALJ's findings regarding her ability to walk, stand, and shop are erroneous. (Reply 2-3). She argues that the ALJ's finding that "she is able to visit friends and family several times a month" is erroneous because she reported that "they come visit me." (Reply 3) (quoting R.24, 226). She argues that the Commissioner

reliance on SSR 85-16 and <u>Tillery</u> is "highly improper because there is no way the actions of the administrative law judge [in inferring that Plaintiff is able to shop in a reasonable time frame and is able to visit family and friends several times a month] could ever be deemed 'reasonable.' Plaintiff does not think it reasonable that the administrative law judge misstate the factual content of the very form (exhibit [5E]) that the administrative law judge relies upon." (Reply 3). Plaintiff argues that ALJ provided merely a "shallow analysis" of Plaintiff's function report in finding the evidence shows that Plaintiff is able to ambulate effectively, when a "deeper analysis clearly demonstrates testamentary evidence of Plaintiff's inability to ambulate effectively." (Reply 5). Plaintiff objects to the Commissioner's characterization that Plaintiff essentially denied that her impairments seriously interfered with activities of daily living, and asserts that she made no such admission. (Reply 6). Plaintiff finally argues:

> Defendant demonstrates a misunderstanding of Plaintiff's essential argument at Page 4 of Defendant's Brief. Plaintiff is not arguing for a finding of disability at Step III, Plaintiff is arguing for a proper consideration and accurate rendering of residual functional capacity that, when accurately presented and reflective of Plaintiff's limitations and restrictions, including the ability to ambulate, such findings would serve to eliminate work. Success at Step III is thus inconsequential and disability may still be granted at Step V.
>
> However, the distraction and interference from improperly derived findings regarding an inaccurate reflection of the ability to ambulate effectively has improperly prevented an award of benefits and for these reasons this case is suitable for remand.

(Reply 8).

## A.  Standard For Evaluating Step Three

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling. 20 C.F.R. § 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled"). However, Plaintiff "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet all of the specified medical criteria' contained in a particular listing." Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)). "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing. Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the

Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively."  Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

At issue here because of the dislocation of Plaintiff's patella, and because of Plaintiff's autoamputation are the criteria of Listing 1.02 (Major dysfunction of a joint(s) due to any cause), or Listing 1.05 (Amputation due to any cause).  To meet the criteria of either Listing requires an "inability to ambulate effectively."  20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 1.02A, 1.05B, or 1.05C.  "Inability to ambulate effectively means an extreme limitation of the ability to walk."  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1) (emphasis added).  "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living."  Id., § 1.00(B)(2)(b)(2).  And, they must be able to travel to and from a place of employment without companion assistance.  Id.  "[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches, or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, . . . [and] the inability to carry out routine ambulatory activities, such as shopping and banking."  Id.

### B.    The ALJ's Step Three Findings

The ALJ determined that Plaintiff does not meet or equal the criteria of either Listing 1.02 or Listing 1.05 because she "can ambulate effectively on her prosthesis with at most a moderately limping gait."  (R. 23)  She explained her finding:

> Although the claimant has a moderate limp when using her prosthesis, there is no evidence that she requires two canes, two crutches or a wheelchair to ambulate or that she could not walk at a reasonable pace.  Further, forms completed by the claimant demonstrate that she is able to shop in a reasonable time frame, visit friends, attend church regularly, and she admits she would be able to go out to movies and restaurants if she could afford to do so.  These activities would require her to be able to sustain some degree of ambulation on her prosthesis.

(R. 23) (citing Ex. 5E (R. 217-29) and testimony).  Later, when discussing Plaintiff's moderate difficulties in social functioning, the ALJ stated that Plaintiff "reported that she is able to visit friends and family several times a month, converse on the telephone, interact with her children, attend church, and shop."  (R. 24) (citing Ex. 5E).

### C.    **Analysis**

As a preliminary matter, the court notes that the ALJ determined Plaintiff's allegations regarding her symptoms are not credible, and the court found that determination supported by the record evidence.  Thus, Plaintiff's reliance on her hearing testimony and on the limitations she asserted when completing her function report is misplaced.  Moreover, the function report supports the ALJ's findings.  Plaintiff reported that she shops in stores two to three times a week (R. 225), she goes to the store and to church on a regular basis, "anywhere from everyday to twice a week" and that she has social activities on the computer, talks on the phone, and she hangs out with friends who "come visit me," and she does these activities "usually every day."  (R. 226).  At the hearing, Plaintiff testified that she goes to church every Sunday, and that she would go out to eat and to the movies if she could afford it (R. 48-49), she testified that she goes to

16

her children's grandparents for Sunday dinner and that she will go out and visit a friend "about three times a month." (R. 50-51).

Plaintiff argues that she does not contend that she is disabled at step three of the sequential evaluation process, but she clearly objects to the ALJ's step three finding that she is able to ambulate effectively. (Pl. Br. 15). Moreover, immediately after asserting that she is not arguing for a finding of disability at step three, she argues that the award of benefits has been improperly prevented because of "an inaccurate reflection of the ability to ambulate effectively." (Reply 8). The step three standard as presented above is clear. If Plaintiff is unable to ambulate effectively either because of residuals from her dislocated patella or because of her amputation, she must be conclusively presumed to be disabled at step three in accordance with either Listing 1.02 or Listing 1.05. If the ALJ's finding that Plaintiff is able to ambulate effectively is correct, she is not disabled at step three of the evaluation. Moreover, if Plaintiff is attempting to argue that the ALJ's RFC assessment is erroneous because it does not include sufficient limitations in her ability to sit, or to stand and/or walk, the only evidence to which she points to establish greater limitations is her allegations in Exhibit 5E, and her testimony at the hearing. The court has already determined that the ALJ properly discounted the credibility of Plaintiff's allegations of disabling symptoms.

Plaintiff argues that it was error for the ALJ to find that Plaintiff is able to shop in a reasonable time frame, because although Plaintiff stated that she shops in stores two or three times a week, she did not say how long it takes her to shop. (Pl. Br. 17). This

argument is without merit.  To be sure, the function report to which Plaintiff refers and on which the ALJ relied asked, "[h]ow often do you shop and how long does it take?" and Plaintiff replied simply "2-3 times a week," and did not say how long such shopping required.  (R. 225).  However, Plaintiff's argument ignores both the burden of proof in a Social Security disability proceeding and the duty of the ALJ in making her decision.

It is Plaintiff's burden to show that she is disabled and what her limitations are.  However, when confronted with the question at issue, she responded that she shops two or three times a week, and ignored the inquiry as to how long that shopping takes.  In the circumstances, it is a reasonable inference that shopping does not require an excessive amount of time, or Plaintiff would have noticed the inquiry and would have expressed concern to that effect.  Moreover, the record indicates that Plaintiff goes to church and to her children's grandparent's house every Sunday, shops two to three times a week, hangs out with friends and talks on the phone usually every day, and goes out and visits a friend about three times a month.  It is also a reasonable inference that if Plaintiff took an inordinate amount of time to complete such activities they would not be so extensive, or at least she would have mentioned limitations to that effect.  Although the record is clear that Plaintiff uses a prosthesis and gets around slower than many people, at none of the opportunities provided by the function report or in her hearing testimony did Plaintiff suggest that she cannot accomplish any of these activities in a reasonable time frame.  Plaintiff has not met her burden to show that she cannot shop in a reasonable time frame.  Further, as the Commissioner points out, SSR 85-16, 1985 WL 56855, at *2 explains that

18

"[i]n analyzing the evidence, it is necessary to draw meaningful inferences and allow reasonable conclusions about the individual's strength and weaknesses."  The inference drawn by the ALJ in this regard is both meaningful and reasonable despite Plaintiff's protestations otherwise.

Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 17th day of March 2016, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

19